Peter Kristofer Strojnik, State Bar No. 242728
pstrojnik@strojniklaw.com
**THE STROJNIK FIRM LLC**
**A LIMITED LIABILITY COMPANY**
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 510-9409
Facsimile: (602) 773-0370

Attorneys for Plaintiff THERESA BROOKE

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| WOODLAND LODGING, LLC, a California limited liability company dba Fairfield Inn & Suites, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff alleges:

## PARTIES

1. Plaintiff Theresa Brooke is a married woman currently residing in Pinal County, Arizona. Plaintiff is and, at all times relevant hereto, has been legally disabled, confined to a wheel chair, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act, California Civil Code § 51, 52, and the California Disabled Persons Act. Plaintiff ambulates with the aid of a wheelchair due to the loss of a leg.

2. Defendant, Woodland Lodging, LLC, owns and/or operates and does business as the hotel, Fairfield Inn & Suites located at 2100 Freeway Drive, Woodland, California 95776. Defendant's hotel is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging services.

## INTRODUCTION

3. Plaintiff Theresa Brooke brings this action against Defendant, alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., (the "ADA") and its implementing regulations, the California Unruh Civil Rights Act ("Unruh"), California Civil Code §§51, 52, and the California Disabled Persons Act ("DPA"), California Civil Code §§54-54.3.

4. Plaintiff is a disabled woman confined to a wheelchair. She brings this civil rights action against Defendant for failing to design, construct, and/or own or operate hotel facilities that are fully accessible to, and independently usable by, disabled people. Specifically, Defendant's hotel, which is a place of public accommodation, does not have a Passenger Loading Zone that complies with Section 503 of the 2010 Standards of Accessible Design; along the passenger loading zone, there is no disabled access aisle that complies with Section 503.3 of the Standards; the lack of an access aisle precludes a disabled person's entry to the lobby area directly from the passenger loading zone. Therefore, Plaintiff seeks a declaration that Defendant's hotel violates federal law and an injunction requiring Defendant to bring its passenger loading zone into compliance with ADA requirements and the 2010 Standards of Accessible Design. Plaintiff further requests that, given Defendant's historical failure to comply with the ADA's mandate, the Court retain jurisdiction of this matter for a period to be determined to ensure that Defendant comes into compliance with the relevant requirements of the ADA, and to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

5.    In compliance with R10-3-405(H)(1), Plaintiff's address is c/o Peter Kristofer Strojnik, her attorney, 2415 East Camelback, Suite 700, Phoenix, Arizona 85016.

## JURISDICTION AND VENUE

6.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188. The Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

7.    Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

8.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## ALLEGATIONS COMMON TO ALL COUNTS

9.    Plaintiff is a disabled woman that relies on a wheelchair for locomotion. Her disability is that she only has one leg. She cannot walk.

10.   Plaintiff and her husband are avid travelers to California. Due to Plaintiff's many special needs, she requires the privileges of disability access such as access aisles at hotel lobby passenger zones. She cannot navigate a passenger loading zone at a lobby if it has a curb and there is no compliant access aisle, especially if there are additional variants such as a vehicle blocking an existing non-compliant access aisle or cut-out.

11.   On or about May 20, 2018, Plaintiff was in the Sacramento area and went to Defendant's hotel to book a room. However, when she pulled up to the passenger loading zone to make a reservation and check into the hotel, there was a non-compliant access aisle that precluded her entry into the lobby from the passenger loading zone. The access aisle marked at Defendant's hotel was far from wide enough to accommodate a wheelchair; an access aisle must be at 60 inches wide minimum, which is illustrated below:

3

(Source: *U.S. Access Board Technical Guide*)

12. Had Defendant provided equality and allowed her to access to the lobby from the passenger loading zone in the same manner as able-bodied persons can access, which is required by Section 503 of the Standards, Plaintiff would have booked a room.

13. It is a violation of Section 503.3 of the Standards, and hence the ADA, for a passenger loading zone to not have an access aisle that is at least 60 inches wide and a full car-length long in the center of the loading zone closest to the lobby entrance. Defendant violated this Section.

14. Plaintiff has personal knowledge of a barrier related to her disability, as noted above, and is currently deterred from returning to Defendant's accommodation by this accessibility barrier. Therefore, she has suffered an injury-in-fact for the purpose of her standing to bring this action.

15. As a result of Defendant's non-compliance with the ADA, Plaintiff did not lodge at the hotel. However, notwithstanding the barriers at issue, Plaintiff will lodge at Defendant's hotel _if_ Defendant removes the barriers at issue. It is anticipated that in the coming months Defendant will have removed the barriers complained of herein, which will provide Plaintiff with full and equal access for her planned trip and desire to lodge at Defendant's hotel for a planned trip with her husband to Sacramento

later this summer in late September. Plaintiff especially hopes Defendant does in fact remediate, as she wishes to diversify her lodging during her visits. It is also rare for a hotel to be fully compliant with the ADA, which limits Plaintiff's choice of lodging.

16. Plaintiff and other disabled persons have been injured by Defendant's discriminatory practices and failure to remove architectural barriers. These injuries include being deterred from using Defendant's hotel due to the lack of ADA-compliant passenger loading zone.

17. Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel in violation of her rights under the ADA.

18. Other potential violations and barriers to entry at Defendant's hotel may be discovered through an expert inspection of the hotel property pursuant to Rule 34. So as to avoid piecemeal litigation to ensure full access to the entirety of the property at issue, Plaintiff will amend her complaint to allege and all additional barriers discovered during the Rule 34 inspection. *Doran v. 7-Eleven*, 524 F.3d 1034 (9th Cir. 2008).

## FIRST CAUSE OF ACTION
### (Violation of Title III the Americans with Disabilities Act)

19. Plaintiff incorporates all allegations heretofore set forth.

20. Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and the 2010 Standards, as described above.

21. Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and the 2010 Standards, as described above. Compliance with the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

22. In violation of the 2010 Standards, Defendant's hotel passenger loading zone does not have a disability access aisle as required by Section 503 of the Standards.

23. Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and the 2010 Standards, as described above, is readily achievable by the Defendant. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

24. Conversely, the cessation of compliance with the ADA law is also readily achievable. Therefore, injunctive relief should issue irrespective of Defendant's potential voluntary cessation pursuant to the Supreme Court's announcement in *Friends of the Earth* case[1].

25. Defendant's conduct is ongoing, and, given that Defendant has never fully complied with the ADA's requirements that public accommodations make lodging services fully accessible to, and independently usable by, disabled individuals, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

26. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the

---

[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000):

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

6

ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its passenger loading zone be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that all of its passenger loading zone is fully accessible to, and independently usable by, disabled individuals;

    b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its passenger loading zone into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the passenger loading zone is fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its passenger loading zone is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

    c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

    d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance

with the "prevailing party" and "material alteration" of the parties' relationship doctrines[2] in an amount no less than $3,500.00; and,

e. Nominal damages pursuant to the Ninth Circuit Court of Appeal's recently decision in *Bayer v. Neiman Marcus Group, Inc.*, Ninth Circuit case no. 15-15287 (June 26, 2017) (for publication); and,

f. Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

g. The provision of whatever other relief the Court deems just, equitable and appropriate.

## SECOND CAUSE OF ACTION
**(Violation of the California Unruh Civil Rights Act, Cal. Civ. Code §§51, 52)**

27. Plaintiff realleges all allegations heretofore set forth.

28. Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

29. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

30. Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

31. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $4,000.00.

32. Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

---

[2] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

    a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

    b. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its passenger loading zone into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the passenger loading zone is fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its passenger loading zone is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

    c. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

    d. Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[3] in an amount no less than $3,500.00; and,

    e. Nominal damages pursuant to the Ninth Circuit Court of Appeal's recently decision in *Bayer v. Neiman Marcus Group, Inc.*, Ninth Circuit case no. 15-15287 (June 26, 2017) (for publication); and,

---

[3] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

    f.  Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and

    g.  For damages in an amount no less than $4,000.00; and

    h.  The provision of whatever other relief the Court deems just, equitable and appropriate.

## THIRD CAUSE OF ACTION
**(Violation of the California Disabled Persons Act, Cal. Civ. Code §§54-54.3)**

33.    Plaintiff realleges all allegations heretofore set forth.

34.    Defendant has violated the DPA by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

35.    The DPA provides for monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

36.    Plaintiff has been damaged by the Defendant's non-compliance with the DPA.

37.    Pursuant to the DPA, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount to be proven at trial, but in no event less than $1,000.00. Cal. Civ. Code § 54.3.

38.    Pursuant to the DPA, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial. Cal. Civ. Code § 54.3.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a.  A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

    b.  Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its passenger loading zone into full compliance with the requirements set forth in the ADA, and its implementing regulations,

|   |   |
|---|---|
|   | so that the passenger loading zone is fully accessible to, and independently usable by, disabled individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that its passenger loading zone is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law; |
| c. | Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit; |
| d. | Irrespective of Defendants "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines[4] in an amount no less than $3,500.00; and, |
| e. | Nominal damages pursuant to the Ninth Circuit Court of Appeal's recently decision in *Bayer v. Neiman Marcus Group, Inc*., Ninth Circuit case no. 15-15287 (June 26, 2017) (for publication); and, |
| f. | Order closure of the Defendant's place of public accommodation until Defendant has fully complied with the ADA; and |
| g. | For damages in an amount no less than $1,000.00; and |
| h. | The provision of whatever other relief the Court deems just, equitable and appropriate. |

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

---

[4] As applicable to ADA cases, see *Coppi v. City of Dana Point*, Case No. SACV 11-1813 JGB (RNBx) (February, 2015)

11

RESPECTFULLY SUBMITTED this 31st day of July, 2018.

                                    **THE STROJNIK FIRM L.L.C.**

Peter Kristofer Strojnik (242728)
2415 East Camelback Road, Suite 700
Phoenix, Arizona 85016
Attorneys for Plaintiff

**VERIFICATION COMPLIANT WITH R10-3-405**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of July, 2018.

Theresa Brooke